# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK K MUBIRU,<br><br>  Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, N.A.,<br><br>  Defendant. | Case No. 1:23-cv-01597-KES-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 46, 48-52, 54-59)<br><br>**OBJECTIONS DUE WITHIN TWENTY-ONE DAYS** |

Plaintiff Frank K. Mubiru, appearing pro se and having paid the filing fee, brings this action against Defendant Wells Fargo Bank, N.A. after Plaintiff, a Wells Fargo depositor, was erroneously identified as deceased on his personal checking account. Plaintiff contends that Defendant's conduct after the error, but not the error itself, was negligent and caused him to suffer emotional distress.

Currently before the Court is Defendant's motion for summary judgment for all claims brought against it. This matter has been referred to the undersigned for the preparation of findings and recommendations pursuant to Local Rule 302(c) and 28 U.S.C. § 636(b)(1)(A). The Court finds the matter suitable for decision without oral argument. L.R. 230(g).

Having considered the moving papers, the declarations and exhibits attached thereto, the parties' statements of facts, as well as the Court's file, the Court recommends that Defendant's motion for summary judgment be granted.

# I.

# BACKGROUND

## A. Procedural Background

On November 13, 2023, Plaintiff initiated this diversity action against Defendant. (ECF No. 1.) Although Plaintiff's complaint does not state any specific cause of action against Defendant, Plaintiff's civil cover sheet states that "Defendant caused injury by negligence." (ECF No. 1-1.) In his request for relief, Plaintiff requests compensatory damages "because of the impact of defendant's conduct on plaintiff's life rendering him unable to continue living and working normally." (ECF No. 1 at 7.)[1] Plaintiff also requests punitive damages "because [D]efendant's conduct was egregious and shocking to the conscience…." (Id.)

On February 27, 2024, Defendant filed its answer. (ECF No. 8.)

On August 12, 2024, the Court entered the parties' stipulation to conduct Plaintiff's mental examination pursuant to Rule 35 of the Federal Rules of Civil Procedure. (ECF No. 33.)

On February 11, 2025, Defendant filed a redacted motion for summary judgment with supporting exhibits.[2] (ECF No. 46-1.) One exhibit is Defendant's statement of undisputed facts. (ECF No. 46-2.)

On February 24, 2025, Plaintiff filed his opposition. (ECF No. 55.) Plaintiff also filed a separate response to each fact contained within Defendant's statement of undisputed facts. (ECF No. 54.) Plaintiff filed an additional separate statement of *disputed* facts, supported by exhibits. (ECF No. 56.)

On March 6, 2025, Defendant filed its reply. (ECF No. 57.) Defendant also filed a separate response to Plaintiff's statement of facts; however, Defendant misconstrues Plaintiff's separate statement of *disputed* facts (ECF No. 56) as a statement of *undisputed* facts. (ECF No. 58.) Additionally, Defendant filed objections to evidence that Plaintiff submitted in support of his separate statement of disputed facts. (ECF No. 59.)

---

[1] All references herein to pagination of electronically filed documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2] Defendant also filed an unredacted motion (ECF No. 49) and particular exhibits under seal. (ECF Nos. 48, 50-52.)

**B.     Factual Background**[3]

Plaintiff had a Wells Fargo personal checking account, number x5251. (ECF No. 54 at 2.) Plaintiff was also a joint accountholder with his son on savings account number x7025. (Id.)

On October 28, 2021, Plaintiff and his son went to a Wells Fargo branch to remove Plaintiff from the joint savings account. (ECF No. 54 at 2.) The "Relationship Change Application" used to remove Plaintiff from account number x7025 erroneously identified Plaintiff as deceased. (Id.) Neither Plaintiff nor his son noticed the error. (Id.)

On November 30, 2021, Plaintiff visited a Wells Fargo branch to withdraw cash from his personal checking account. (ECF No. 54 at 2.) However, Plaintiff was unable to withdraw funds due to the "deceased" designation. (Id.; ECF No. 58 at 2.) Plaintiff contends that he was informed by Wells Fargo employees that his account was closed. (ECF No. 54 at 2; ECF No. 58 at 2.) Plaintiff avers that when he inquired why his account was closed, employees told Plaintiff that "as far as we are concerned, you are deceased." (ECF No. 58 at 2; Affidavit of Frank K. Mubiru ("Pl. Aff."), ECF No. 56 at 9.) The employees give Plaintiff a pre-prepared form entitled "Certificate Declaration of Life" to complete, notarize, and return to reinstate access to his account. (Pl. Aff. ¶ 2; ECF No. 54-3.)

On the same day, November 30, 2021, Plaintiff returned the notarized form to a Wells Fargo branch. (ECF No. 54 at 3.) An employee told Plaintiff the form would be sent for processing. (Id.) On December 3, 2021, Plaintiff's account was unfrozen. (Id.)

The Wells Fargo employees Plaintiff interacted with were polite, professional, and helpful. (ECF No. 54 at 4.) However, Plaintiff claims that being informed he was deceased and being required to complete a Declaration of Life to prove he was alive greatly distressed and traumatized him, causing immediate mental stress, anguish, hopelessness, pain, and suffering. (Pl. Aff. ¶¶ 2-3; ECF No. 56 at 2.) Plaintiff, however, did not raise a complaint with anyone at Wells Fargo related to his symptoms (Dep. Frank. K. Mubiru ("Pl. Dep."), ECF No. 46-4 at 30-31), delayed seeking medical care, and attributed his symptoms to generalized stress rather than

---

[3] The facts contained herein are relevant undisputed facts unless otherwise noted and are derived from the four iterations of the parties' statements of undisputed and disputed facts, the exhibits attached thereto (ECF Nos. 46-2; 54, 56; 58), as well as the declarations and exhibits attached to the parties' briefing.

Defendant's actions. (ECF No. 54 at 4.) Although Plaintiff has a pre-existing mental health diagnosis, he did not disclose it when he did seek medical care. (Id.) Plaintiff contends his mental health has been deteriorating since November 30, 2021. (Pl. Aff. ¶ 3.)

## II.

## JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS

### A.  Judicial Notice

On December, 26, 2024, Plaintiff filed a request for judicial notice, unattached to any motion or corresponding request. (ECF No. 34.) Although Plaintiff's request was filed months before Defendant's motion for summary judgment was filed, the Court addresses Plaintiff's request as though it is made in support of his opposition to the instant motion for summary judgment in an abundance of caution.

Plaintiff first requests that the Court take judicial notice of the notarized Certificate Declaration of Life, executed on November 30, 2021. (ECF No. 34 at 4-6.) The Court notes this same document is provided as an exhibit to both Defendant's motion for summary judgment (ECF No. 46-7 at 1-2) and Plaintiff's separate statement of disputed facts (ECF No. 56 at 6-7). The Court takes judicial notice of the undisputed Certificate Declaration of Life.

Plaintiff also requests that the Court take judicial notice of a letter dated May 10, 2022, that an employee of Defendant sent Plaintiff. (ECF No. 34 at 8-9.) The letter informs Plaintiff of the standard notification procedures for deceased depositors, including the requirement that a certified copy of a death certificate be presented before Defendant can designate that a customer is deceased. (Id.) However, it is an undisputed fact that Plaintiff was erroneously identified as deceased in the "Relationship Change Application" used to remove Plaintiff from joint savings account number x7025, which in turn effected his status on his personal account. (ECF No. 54 at 1-3.) Thus, Defendant's standard notification procedure for deceased depositors is irrelevant to this action. The Court declines to take judicial notice of the May 10, 2022 correspondence.

Finally, Plaintiff requests that the Court take judicial notice of an unredacted page from the independent medical examiner's psychological evaluation report. (ECF No. 44 at 11.) The Court notes that redacted and unredacted copies of J. Vincent Filoteo, Ph.D.'s complete report is

filed in support of Defendant's motion for summary judgment. The Court considers the report in its entirety contained in the copy filed under seal.

### B. Evidentiary Objections

In support of his statement of disputed facts filed with his opposition to Defendant's motion, Plaintiff provides a printout of his employee earnings statement purporting to show that his paycheck issued "by direct deposit in the forth [*sic*] week of November 2021 was rejected and bounced back to the issuer." (ECF No. 56 at 2, 4.)

As to Defendant's objection to the printout on the basis of relevance, the Court notes that when evaluating a motion for summary judgment for a genuine dispute of *material* fact, a court "cannot rely on irrelevant facts, and thus relevance objections are redundant." Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Defendant filed other boilerplate evidentiary objections to the printout, including hearsay and "foundation/authentication." (ECF No. 59); see Torres v. Los Angeles Sheriff's Dept., Case No. CV 22-07450-MWF (MARx), 2024 WL 4720808, at *5 (C.D. Cal. Aug. 14, 2024). However, "at the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." Sandoval v. Cnty. of San Diego, 985 F.3d 657, 666 (9th Cir. 2021) (quoting Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)). In other words, "[i]f the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." Id. (citing Fraser, 342 F.3d at 1036-37).

Though Defendant's objections could prove cognizable at trial, for purposes of the instant motion, the Court only focuses on the admissibility of the relevancy of the facts, not the form of the facts as presented in the instant motion. See Torres, 2024 WL 4720808, at *5. Even if this particular printout of Plaintiff's earnings statement itself is not admissible, it is possible that Plaintiff could offer the facts underlying the document in an admissible form at trial.

Accordingly, to the extent the Court relies upon Plaintiff's earning statement in deciding the instant motion for summary judgment, Defendant's objections are overruled. To the extent

the Court does not, Defendant's objections are denied as moot.

## III.

## LEGAL STANDARD

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (cleaned up). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. Celotex, 477 at 324. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986). Rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Should the non-moving party fail to produce evidence that supports its claim or defense, courts enter judgment in favor of the movant. Celotex, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. AXIS

1  Reinsurance Co. v. Northrop Grumman Corp., 975 F.3d 840, 844 (9th Cir. 2020).  If, as to any
2  given material fact, evidence produced by the moving party conflicts with evidence produced by
3  the nonmoving party, the Court must assume the truth of the evidence set forth by the
4  nonmoving party with respect to that material fact.  Furnace v. Sullivan, 705 F.3d 1021, 1026
5  (9th Cir. 2013).  "[T]he mere existence of *some* alleged factual dispute between the parties will
6  not defeat an otherwise properly supported motion for summary judgment; the requirement is
7  that there be no *genuine* issue of *material* fact."  Scott v. Harris, 550 U.S. 372, 380 (2007)
8  (quoting Anderson, 477 U.S. at 247-48) (emphasis in original).  In ruling on a motion for
9  summary judgment, a district court may not engage in credibility determinations or weigh
10 conflicting evidence.  Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017).

**IV.**

**DISCUSSION**

Because Plaintiff's complaint does not clearly set forth separate causes of action and Defendant did not file any Rule 12 motion earlier in these proceedings, Defendant interprets the pro se Plaintiff's complaint at this late stage in the proceedings as one alleging intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence as a result of the clerical error, and requests summary judgment of each claim.  The Court shall address each interpreted claim in turn.

**A.      Intentional Infliction of Emotional Distress**

Defendant argues summary judgment should be granted to the extent Plaintiff alleges a claim for intentional infliction of emotional distress ("IIED") based on the unintentional clerical error, as such error was not "extreme and outrageous," committed "with the intention of causing, or reckless disregard of the probability of causing, emotional distress."  Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (citations and quotations omitted); (ECF No. 46-1 at 6).

In his opposition brief, Plaintiff does not acknowledge Defendant's IIED argument.  See Jenkins v. Cnty. of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment); Foster v. City of Fresno, 392 F.Supp.2d 1140, 1147 n. 7 (E.D. Cal. 2005) ("[F]ailure of a party to address a claim

1  in an opposition to a motion for summary judgment may constitute a waiver of that claim.").
2  Instead, Plaintiff clarifies that he does *not* attribute any of his symptoms to the October 28, 2021
3  clerical error; rather, Plaintiff contends he suffered serious emotional distress as a result of what
4  Defendant's employees said and did to him on November 30, 2021. (ECF No. 55 at 1; ECF No.
5  54 at 4, 5; ECF No. 56 at 9.)  Notably, Plaintiff does not argue that he makes an IIED claim
6  based upon the Defendant's employees' conduct after the clerical error.  Rather, Plaintiff clearly
7  argues his action is one of "negligence [that] led to personal injury to the Plaintiff arising to the
8  claim for the Negligent Infliction of Emotional Distress." (ECF No. 55 at 3.)  Thus, Plaintiff
9  does not allege any IIED claim against Defendant in this action.  Summary judgment of a
10 nonexistent claim is therefore unnecessary.

**B.   Negligent Infliction of Emotional Distress**

Defendant's motion for summary judgment rests on its interpretation that Plaintiff's alleged serious emotional distress is a direct result of the clerical error that identified Plaintiff as deceased.  Plaintiff argues that Defendant's motion misconstrues the basis of his claim.  As previously stated, Plaintiff clarifies that he suffered serious emotional distress *not* as a result of the October 28, 2021 clerical error, but as a result of what Defendant's employees said and did to him on November 30, 2021 when he requested to withdraw funds from his checking account and was denied access. (ECF No. 55 at 1.)  The cause of Plaintiff's alleged serious emotional distress is being told by Defendant's employees on November 30, 2021 that his account is closed,[4] that he is deceased, and that he is required to complete a Certificate Declaration of Life.

---

[4] The parties vigorously dispute whether Plaintiff's account was actually closed or only temporarily frozen. Defendant provides redacted-only copies of transaction histories for Plaintiff's personal checking account purporting to show the account was not closed because Plaintiff had access to online and mobile banking and there continued to be activity on the account. (Decl. Tiffany Ward, ECF No. 46-5 at 3, ¶ 8; ECF Nos. 46-8, 46-9). In response, Plaintiff provides a printout of his earnings statement which purports to show his account was closed because a blank row reflects that his late November 2021 paycheck bounced back to the issuer. (ECF No. 56 at 2, 4.) Neither party's evidence establishes the status of Plaintiff's personal checking account from October 28, 2021 through December 3, 2021. Thus, viewing the evidence in the light most favorable to Plaintiff and drawing all justifiable inferences in his favor, a genuine dispute of fact exists as to the status of Plaintiff's personal checking account.  However, whether the account was actually closed or frozen is immaterial.  See Scott, 550 U.S. at 380 (the requirement to grant summary judgment "is that there be no *genuine* issue of *material* fact."). Plaintiff does not claim any damages as a result of his account being closed or frozen; rather, he alleges a claim solely for emotional distress related to Defendant's employees' conduct on November 28, 2021, when Plaintiff was allegedly *told* his account was closed because he was deceased.

1  (See id.) Plaintiff avers that Defendant's employees should have known that telling Plaintiff that he is deceased would demean and harm him. (Id. at 4.) Plaintiff argues that Defendant's employees' failure to behave with the level of care that a reasonable person would have exercised under the same circumstances "led to personal injury to the Plaintiff arising into the claim for the Negligent Infliction of Emotional Distress." (ECF No. 55 at 3.) In reply, Defendant primarily argues summary judgment should be granted because Plaintiff fails to establish that Defendant owed him a duty of care to avoid causing him emotional distress.

In California, there is no independent tort of negligent infliction of emotional distress ("NIED"); rather, "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993). Thus, "[t]he traditional elements of duty, breach of duty, causation, and damages apply. Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability." Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal. 3d 583, 588 (1989) (citation omitted). "Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if the plaintiff's interests are entitled to legal protection against the defendant's conduct. Whether a duty exists is a question of law to be resolved by the court." Brown v. USA Taekwondo, 11 Cal. 5th 204, 213 (2021) (internal quotations and citations omitted).

California NIED claims are categorized as one of two cases: bystander cases and direct victim cases. Burgess v. Superior Court, 2 Cal. 4th 1064, 1071 (1992). The distinction between them is found in the source of the duty owed by the defendant to the plaintiff. Id. at 1072. Bystander cases are "premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another." Id. at 1073. Direct victim cases "are cases in which the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the violation of a duty owed directly to the plaintiff." Wooden v. Raveling, 61 Cal. App. 4th 1035, 1038 (1998). In a direct victim case, "damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of

law, or that arises out of a relationship between the two.' " Burgess, 2 Cal. 4th at 1073 (quoting Marlene F., 48 Cal. 3d at 590).

Here, Plaintiff's claim is not based upon witnessing injury to another. Rather, Plaintiff claims he personally suffered serious emotional distress upon being informed by Defendant's employees that his account was closed because he was deceased, and that he needed a notarized Declaration of Life to reinstate access. (Pl. Aff. ¶ 2.) Plaintiff thus claims he is a direct victim of Defendant's employees' purportedly negligent conduct on November 30, 2021. There is no duty in California to avoid negligently causing emotional distress to another. Potter, 6 Cal. 4th at 984-85; Henry v. Bank of Am. Corp., No. C 09-00628 RS, 2011 WL 13143145, at *4 (N.D. Cal. July 15, 2011), aff'd, 522 F. App'x 406 (9th Cir. 2013). Thus, Plaintiff's alleged damages for emotional distress are recoverable only if Defendant has breached some other duty that it assumed, is imposed by law, or arises out of a relationship between itself and Plaintiff.

Plaintiff generally argues that "Defendant owed a duty of ordinary care to the Plaintiff who was a customer." (ECF No. 55 at 4.) To the extent Plaintiff contends that the duty supporting his direct victim NIED case arises out of a duty assumed by Defendant or a preexisting relationship between a bank and its depositor, the Court is unpersuaded. "The relationship between a bank and its depositor is not fiduciary in character but, rather, 'founded on contract.' " Kurtz-Ahlers, LLC v. Bank of Am., N.A., 48 Cal. App. 5th 952, 956 (2020) (quoting Chazen v. Centennial Bank, 61 Cal. App. 4th 532, 537 (1998) ("banks 'are not fiduciaries for their depositors' ")). Nevertheless, a bank has "a duty to act with reasonable care in its transactions with its depositors….' Bullis v. Sec. Pac. Nat. Bank, 21 Cal. 3d 801, 808 (1978). Such duty "is an implied term in the contract between the bank and its depositor." Chazen, 61 Cal. App. 4th at 543. This duty generally arises in cases seeking recovery in tort for negligently inflicted *purely economic losses* stemming from financial transactions. See, e.g., S&S Worldwide, Inc. v. Wells Fargo Bank, 509 F. Supp. 3d 1154, 1161-62 (N.D. Cal. 2020) ("[C]ase law reflects the narrow scope of a bank's duties under the deposit agreement," namely a duty "to honor checks properly payable from the depositor's account," a duty "to dishonor checks lacking required signatures," and a duty "to render faithful and accurate accounts under the

contract of deposit") (citation omitted); Hawkins v. Bank of Am., N.A., No. 17-CV-01954-BAS-AGS, 2018 WL 1316160, at *3 (S.D. Cal. Mar. 14, 2018) (finding plaintiff sufficiently pled a breach of an assumed duty of care where plaintiff informed the bank about fraudulent transfers, a bank employee assured plaintiff that the legal department would handle the matter, but the bank allowed seven months to lapse before taking action).

Here, Plaintiff asserts that his claim is based on Defendant's employees' conduct on November 30, 2021, and *not* on any potential failure to take due care in connection with the October 28, 2021 clerical error. Plaintiff, however, does not provide any caselaw—and the Court independently finds none—to support extending a bank's implied duty of care to discharge its contractual duties with reasonable care to a duty to avoid causing its depositor emotional distress during an in-person interaction. Defendant argues—and Plaintiff does not dispute—that Wells Fargo's contractual relationship with its depositor does not give rise to any obligation to prevent causing emotional harm. (ECF No. 57 at 2.) Plaintiff fails to establish that Defendant voluntarily assumed a duty of care to avoid causing Plaintiff emotional distress when Defendant's employees informed Plaintiff that "as far as we are concerned, you are deceased" and required that he return a notarized pre-prepared form to correct the clerical error. Accordingly, the Court finds Plaintiff fails to establish that Defendant has breached some duty that it assumed or one that arises out of the bank-depositor relationship.

To the extent Plaintiff contends that the duty supporting his NIED claim is one imposed on Defendant as a matter of law, the Court is also unpersuaded. Plaintiff repeatedly argues that Defendant's employees failed to act reasonably and that Defendant's employees "had an ordinary duty of care to the Plaintiff which they breached by their negligence." (ECF No. 55 at 3-4.) The Court liberally construes the pro se Plaintiff's argument to aver that Defendant is liable under California's general duty rule, which provides that "[e]veryone is responsible…for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person[.]" Cal. Civ. Code § 1714(a). "Section 1714(a) establishes a general duty of each person to exercise, in his or her activities, reasonable care for the safety of others." Mayall on Behalf of H.C. v. USA Water Polo, Inc., 909 F.3d 1055, 1060 (9th Cir. 2018)

1  (internal quotations and citation omitted).  However, "[w]hat Civil Code section 1714 does not
2  do is impose a presumptive duty of care to guard against any conceivable harm that a negligent
3  act might cause." S. California Gas Leak Cases v. Superior Court, 7 Cal. 5th 391, 399 (2019).

4  Plaintiff points to no authority where Section 1714(a) has been applied to banks or other
5  financial institutions.  This failure is understandable, as "[c]ourts have generally held that banks
6  have a limited duty of care or no duty of care beyond the duties created by the bank-depositor
7  relationship." Gray v. Ben, No. CV 22-03090-DSF (PVCx), 2022 WL 16859609, at *4 (C.D.
8  Cal. Nov. 9, 2022); Gray v. JPMorgan Chase Bank, N.A., 661 F. Supp. 3d 991, 997 (C.D. Cal.
9  2023), aff'd, No. 23-55318, 2024 WL 1342619 (9th Cir. Mar. 29, 2024) (declining to extent
10 California Civil Code section 1714(a) to create liability for a bank).  The Court is not persuaded
11 that Plaintiff's "ordinary duty of care" rule, Section 1714(a), imposes a presumptive duty of care
12 on Defendant to generally avoid distressing its depositors.  Accordingly, the Court finds Plaintiff
13 does not establish that Defendant owed him a duty of care imposed by law to avoid causing
14 Plaintiff emotional distress when its employees informed Plaintiff during a "polite, professional,
15 and helpful" interaction (ECF No. 54 at 4) that his account was closed because he was deceased,
16 and he needed to complete a pre-prepared form to reinstate access.[5]

17 Further, had Plaintiff established that a legal duty existed, absent "rare exceptions, a
18 breach of the duty must threaten physical injury, not simply damage to property or financial
19 interests." Potter, 6 Cal. 4th at 985.  Rare exceptions to emotional distress absent physical injury
20 include "certain specialized classes of cases[ w]here the negligence is of a type which will cause
21 highly unusual as well as *predictable* emotional distress." Branch v. Homefed Bank, 6 Cal. App.
22 4th 793, 800, (1992) (emphasis added); see Kasramehr v. Wells Fargo Bank N.A., No. CV 11-
23 0551 GAF OPX, 2011 WL 12473383, at *10 (C.D. Cal. May 18, 2011) (noting NIED claims are
24 limited to specific types of cases, including "where a defendant mishandled the cremated remains
25 of a plaintiff's brother, a doctor negligently advised a plaintiff's wife that she suffered from

---

[5] Although a determination of breach of the standard of care usually is a question of fact, even if the Court did extend the ordinary duty of care to Wells Fargo, the Court would be hard pressed to agree that a reasonable jury would find Defendant's undisputed "polite, professional, and helpful" employees engaged in conduct—telling Plaintiff that his account was closed because he was designated as deceased and providing Plaintiff with the information and necessary document to reinstate his account—that violated the ordinary due care expected of them.

syphilis, [and] where the defendant owed the plaintiff fiduciary or quasi-fiduciary duties....").

Plaintiff does not provide any evidence that he suffered any threat of physical injury by Defendant's employee's conduct on November 30, 2021. Nor does Plaintiff establish that this case should fall within a specialized class of cases in which negligence absent a threat of physical injury can cause highly unusual and *predictable* emotional distress.[6] Here, it is undisputed that the Relationship Change Application completed on October 28, 2021, to remove Plaintiff from his son's account erroneously indicated that Plaintiff was deceased. (ECF No. 46-6 at 1.) Plaintiff expressly states he does not attribute any symptoms to that clerical error. (ECF No. 54 at 4, 5.) It is also undisputed that Defendant's employees who interacted with Plaintiff were polite, professional, and helpful. (Id. at 4.) When Defendant's employees informed Plaintiff that "as far as they were concerned, [Plaintiff] was deceased," Plaintiff knew he was not deceased and "insisted that there must be a mistake." (ECF No. 56 at 9.) Plaintiff has genuine cause to feel "shock and disbelief" (id.) upon being told by his bank that his account was closed because he was deceased and to feel "demeaned" (ECF No. 55 at 4) by his bank's refusal to accept his insistence that he is not deceased. However, the type of conduct that Plaintiff claims—being informed by Defendant's employees during a polite, professional, and helpful interaction that Plaintiff's bank account indicates he is deceased, and that Plaintiff needs to complete a pre-prepared form to correct the error—is not within a class of NIED cases which will foreseeably cause highly unusual and predictable serious emotional distress.[7]

---

[6] In his response to Defendant's argument regarding physical injury or a specialized class of cases (ECF No. 46-1 at 9), Plaintiff relies on Wooden v. Raveling, 61 Cal. App. 4th 1035 (1998) primarily for the proposition that serious emotional distress under an NIED claim need not be caused by outrageous negligent conduct and does not require physical injury. (ECF No. 55 at 5 (quoting Wooden, 61 Cal. App. 4th at 1043, 1046).) Notably, the facts in Wooden are distinguishable from the instant action as Wooden fell into a specialized NIED category of "near-miss cases." In other words, the Wooden Court held the plaintiff could maintain an action for NIED against a motorist whose car came onto her property and, although the car did not strike her to cause her physical injury, it placed her in *predictable* fear of injury. Wooden, 61 Cal. App. 4th at 1036.

[7] Because Plaintiff cannot establish that Defendant owed Plaintiff a duty of care to support his NIED claim, the Court need not address the subsequent elements of causation and damages, including Plaintiff's invocation of the eggshell plaintiff doctrine due to his pre-existing mental health diagnosis. (ECF No. 55 at 5.) However, the Court must briefly note that it disagrees with Defendant's categorization of its expert's report. Specifically, Defendant requests summary judgment because of the "undisputed evidence" that Plaintiff's serious emotional distress was not caused by the November 30, 2021 incident; rather, as reflected in Defendant's retained expert's report, Plaintiff's damages are opined to be overstated and/or stem from a pre-existing mental health disorder. (ECF No. 54 at 4.) The pro se Plaintiff merely disputes this fact by stating "[f]acts can be challenged by witnesses during trial" without

13

Defendant also argues Plaintiff's NIED claim is barred by the economic loss rule because Plaintiff seeks recovery in tort for what are essentially contract claims. The Court disagrees. The judicially created economic loss rule "bars recovery in negligence for *pure economic losses* when such claims would disrupt the parties' private ordering, render contracts less reliable as a means of organizing commercial relationships, and stifle the development of contract law." Sheen v. Wells Fargo Bank, N.A., 12 Cal. 5th 905, 915 (2022) (emphasis added). This is not a case where Plaintiff alleges that Defendant failed to perform its contractual promises and Plaintiff suffered harm as a result. Nowhere in Plaintiff's complaint, his opposition, his statements of fact, nor his supporting documents does he contend that his claim arises from any contract with Defendant. Rather, Plaintiff contends that his claim for emotional distress arises from the November 30, 2021 "polite, professional, and helpful" interaction with Defendant's employees when they unreasonably told Plaintiff that he was deceased despite "talking with him face to face," and that they required that Plaintiff complete a Certificate of Life. (ECF No. 54 at 4; ECF No. 55 at 1-2, 4.) Additionally, Plaintiff does not seek purely economic losses. As discussed further below, Plaintiff does not claim *any* pure economic loss. Rather, his requested relief is for compensatory damages "because of the impact of defendant's conduct on plaintiff's life rendering him unable to continue living and working normally." (ECF No. 1 at 7.) Accordingly, the Court does not find Plaintiff's NIED claim is barred by the economic loss rule and thus does not recommend summary judgment on such basis.

There is no duty to avoid negligently causing emotional distress to another. Plaintiff's "direct victim" NIED claim fails as he fails to establish the existence of a viable duty owed on behalf of Defendant to Plaintiff that would support his NIED claim. Accordingly, the Court recommends granting Defendant's motion for summary judgment as to Plaintiff's NIED claim.

///

///

---

pointing to record evidence. (Id.) However, Plaintiff provides in a sworn affidavit that the November 30, 2021 incident "greatly distressed and traumatized [Plaintiff and s]ince that day, [his] mental health has been deteriorating," and he continues to receive mental health treatment. (Pl. Aff. ¶ 3.) That Defendant has retained a psychologist who has analyzed Plaintiff's psychological test scores and *opined* as to the cause and extent of Plaintiffs emotional distress does not negate the disputed material facts contained within Plaintiff's affidavit.

### C.     Negligence

To the extent Plaintiff makes a claim of general negligence against Defendant, the Court recomends granting summary judgment on such claim. The Court need not further address the duty element as explained above, and incoproates that analysis here. Plaintiff fails to establish that Defendant owed Plaintiff a duty of care or that any subscribed duty of "ordinary care" placed on Wells Fargo was breached by Defendant's employees on November 30, 2021.

The Court shall briefly address Plaintiff's argument in his opposition that "[a]s a bank, the Defendant['s] duty was to provide the Plaintiff with his cash when requested. The Defendant failed that duty. And after having failed that duty, the Defendant's employees further caused emotional distress by their careless and reckless utterances and actions." (ECF No. 55 at 4-5.) Plaintiff fails to elaborate how the denial of access to his bank account constitutes a negligent action. Further, Plaintiff's complaint does not allege *any* damages stemming from Defendant's refusal to allow Plaintiff to withdraw funds from his personal checking account on November 30, 2021. (See ECF No. 1.) Nor are any allegations in the complaint related to Plaintiff's inability to access his funds between November 30, 2021 through the date of his account's reinstatement on December 3, 2021. (Id.) Plaintiff may not now expand the scope of this litigation via opposition to Defendant's motion for summary judgment. Alvarez v. Hashemi, No. 16-cv-00203-AWI-JLT, 2019 WL 1099838, at *12 (E.D. Cal. Mar. 8, 2019) (citing Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."). Even in opposition, Plaintiff ascribes no damages specifically stemming from Defendant's refusal to withdraw funds and/or Plaintiff's inability to access his funds from at least November 30, 2021 to December 3, 2021. Although Plaintiff provides a record purporting to show that Plaintiff's pay check was rejected and returned to the issuer in the fourth week of November 2021 (ECF No. 56 at 4), Plaintiff does not allege any damages related to that returned paycheck.

If Plaintiff did allege damages, however, the Court would agree with Defendant that the economic loss doctrine would bar the claim. In such case, the challenged conduct would be that Defendant refused to allow Plaintiff to withdraw funds from his account. That conduct is a

15

failure to perform under the bank-depositor contract, not an independent duty of tort law. Tort claims are barred by the economic loss rule "when they arise from – or are not independent of – the parties' underlying contracts." Sheen, 12 Cal. 5th at 923. Accordingly, even if Plaintiff's complaint had alleged a negligence claim based upon Defendant's refusal to allow Plaintiff to withdraw funds from his account *and* Plaintiff had alleged damages as a result of that refusal, the economic loss rule would bar such claim. Accordingly, to the extent Plaintiff alleges a general negligence claim against Defendant, the Court recommends granting summary judgment.

## IV.

## CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 46) be GRANTED; and

2. Judgment be entered in favor of Defendant Wells Fargo, N.A. and against Plaintiff Frank K. Mubiru.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **August 6, 2025**

STANLEY A. BOONE
United States Magistrate Judge